UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:10-CV-01632 |
| REUNION MORTGAGE, INC., | ) |
| | ) |
| Serve c/o: | ) |
| David Thayer, Registered Agent | ) |
| 860 Hillview Court, Suite 300 | ) |
| Milpitas, California  95035 | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff CitiMortgage, Inc. ("CMI"), states as follows for its Complaint for damages against defendant, Reunion Mortgage, Inc. ("Defendant"):

## STATEMENT OF THE CASE

1.     At all times relevant to this Complaint, CMI was in the business of, among other things, purchasing, reselling, and servicing residential mortgage loans on the secondary mortgage market.  Defendant was engaged in the business of originating, sourcing and/or reselling residential mortgage loans.

2.     Defendant has sold loans to CMI at least since 2004.  At various times relevant to this Complaint, and as described in more detail below, Defendant and CMI's relationship is and was governed by a contract entitled "Correspondent Agreement Form 200" dated as of March 10, 2004 (the "Form 200"), a Delegated Underwriting Addendum to the Form 200 dated as of March 10, 2004 (the "Addendum"), and a Bulk Purchase Amendment to the Form 200 dated as of January 25, 2006, and an Early Purchase Program Amendment dated as of November 29,

1

2004 (collectively, "the Amendments")(the Form 200, the Addendum, and the Amendments collectively referred to as the "Agreement").

3. Paragraph 1 of the Agreement expressly incorporates by reference as terms of the Agreement the CitiMortgage, Inc. Correspondent Manual (the "CMI Manual").

4. At various times since 2004, Defendant sold loans to CMI that did not meet – or as to which Defendant did not meet – various requirements under the Agreement. These unmet requirements include, but are not necessarily limited to, delivering loans: (a) that were underwritten and/or originated based upon materially inaccurate information or on material misrepresentations made by the borrower, Defendant, Defendant's directors, officers, employees, agents, independent contractors, and/or affiliates; (b) for which CMI has discovered discrepancies regarding property ownership, income representations, prior undisclosed mortgages or other debts, and occupancy; (c) that were subject to first payment defaults; (d) for which applicable Fannie Mae, Freddie Mac, FHA, VA and/or HUD requirements and industry standards were not followed; or (e) that have turned out to be otherwise defective or not in compliance with the CMI Manual incorporated into the Agreement.

5. CMI gave notice of noncompliance to Defendant and demanded that Defendant meet the requirements contained in the Agreement. Despite these notices and demands, Defendant failed to cure the defects in the specified loans.

6. The Agreement provides CMI with the unilateral right to demand that Defendant repurchase these loans. Because Defendant has failed to cure these defects and comply with its repurchase obligations, it is in breach of the Agreement.

7. Defendant now owes CMI in excess of $4,200,000.00 in damages as a result of its breaches of the Agreement. CMI brings this action to recover those damages as well as its

attorneys' fees, interest, and any further actual and consequential damages resulting from Defendant's breaches of the Agreement.

## PARTIES

8.     CMI is a New York corporation having its principal place of business in O'Fallon, Missouri.

9.     Defendant is a California corporation having its principal place of business in Fremont, California.

## JURISDICTION AND VENUE

10.    Section 12 of the Agreement provides in relevant part that, "CMI and [Defendant] agree that any action, suit or proceeding to enforce or defend any right or obligation under this Agreement or otherwise arising out of either party's performance under this Agreement shall be brought in . . . the United States District Court for the Eastern District of Missouri and each party irrevocably submits to the jurisdiction of [that] forum . . . ."

11.    This Court has diversity subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because CMI and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.    This Court has jurisdiction over Defendant because Defendant has irrevocably submitted to this jurisdiction in the Agreement. This Court also has jurisdiction over Defendant because Defendant transacted business in the State of Missouri by, among other things, selling and delivering loans to CMI within this judicial district.

13.    Venue is proper in this Court because the parties consented to this venue in the Agreement. Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(a) and (c) in that

this is the judicial district in which a substantial part of the events giving rise to CMI's claim occurred and, for purposes of venue, Defendant is deemed to reside in this judicial district.

## STATEMENT OF FACTS

14. On March 10, 2004, Defendant and CMI entered into the Agreement.

15. On March 10, 2004, Defendant and CMI entered into the Addendum.

16. On January 25, 2006, Defendant and CMI entered into the Bulk Purchase Amendment to the Form 200.

17. On November 29, 2004, Defendant and CMI entered into the Early Purchase Program Amendment to the Form 200.

18. True and correct copies of the Agreement, the Addendum, and the Amendments are attached hereto as Exhibit 1 to this Complaint and incorporated by reference herein.

19. Section 12 of the Agreement provides that "[t]his Agreement shall be governed by the laws of the State of Missouri and applicable federal law."

20. Section 1 of the Agreement provides that "[f]rom time to time, [Defendant] may sell to CMI and CMI may purchase from [Defendant] one or more residential mortgage, home equity, or other loans" in accordance with the terms and conditions in the CMI Manual.

21. Section 1 of the Agreement provides that, in connection with the sale of loans, Defendant will deliver loan documentation to CMI in accordance with the terms and conditions of the CMI Manual, that CMI may or may not conduct a complete review of the loan documents at issue, and that CMI's review or failure to review loan documents does not affect CMI's rights to demand the repurchase of defective loans or any other rights or remedies under the Agreement.

22. In Section 2(g) of the Agreement, Defendant agreed to obtain and review the CMI Manual promptly and to comply with all of its terms, conditions, requirements, and procedures.

23. In Section 10 of the Agreement, Defendant agreed to "indemnify and hold CMI harmless from any and all claims, actions and costs, including reasonable attorneys' fees and costs, arising from (i) [Defendant's] performance or failure to perform under the terms, conditions or obligations of this Agreement or the CMI Manual (including but not limited to [Defendant's] failure to timely deliver all documents and records associated with or related to all Loans purchased by CMI pursuant to this Agreement), [or] (ii) any fraud, misrepresentation or breach of any representation, warranty or covenant contained [in] this Agreement or the CMI Manual . . . ."

24. Section 11 of the Agreement provides, in relevant part:

If CMI, in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:

    (i)  was underwritten and/or originated in violation of any term, condition, requirement or procedure of this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan;

    (ii)  was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), [Defendant], [Defendant's] directors, officers, employees, agents, independent contractors and/or affiliates or any other party providing information relating to said Loan;

. . .

    (v)  was subject to any Early Payment Default (as defined in the CMI Manual), an Early Payoff (as defined in the CMI Manual) or any other payment related defect (as defined in the CMI Manual)

. . .

[Defendant] will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI. If, after receiving such notice from CMI, [Defendant] is unable to correct or cure such defect within the prescribed time, [Defendant] shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price"), or (ii) agree to such other remedies (including but not

5

limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.

25. Thus, Section 11 of the Agreement gives CMI the sole discretion to determine whether a loan meets the qualifications of the Agreement and the sole discretion to determine whether to demand repurchase of a given loan for failure to meet these qualifications.

26. Section 12 of the Agreement provides that "[t]his Agreement shall be governed by the laws of the State of Missouri and applicable federal law."

27. The "representations and warranties" in Section 2 of the Agreement were material inducements for CMI to enter into the Agreement and to purchase each of the loans at issue. Defendant's failure to honor those representations and warranties constitutes a material breach of the Agreement.

28. Defendant sold CMI at least twenty-six (26) loans (a) that were underwritten and/or originated based upon materially inaccurate information or on material misrepresentations made by the borrower, Defendant, Defendant's directors, officers, employees, agents, independent contractors, and/or affiliates; (b) for which CMI has discovered discrepancies regarding property ownership, income representations, prior undisclosed mortgages or other debts, and occupancy; (c) that were subject to first payment defaults; (d) for which applicable Fannie Mae, Freddie Mac, FHA, VA and/or HUD requirements and industry standards were not followed; or (e) that have turned out to be otherwise defective or not in compliance with the CMI Manual incorporated into the Agreement.

29. CMI sent notice of these defects and demands to cure to Defendant for these loans.

30. Defendant did not cure the defects in these loans or repurchase the loans.

31. Thereafter, CMI sent demands to repurchase to Defendant for these loans.

32. Defendant did not repurchase the loans.

33. As a result, Defendant is required to indemnify CMI for all losses associated with these loans or to repurchase these loans and indemnify CMI for all losses in addition to the repurchase amount.

34. Defendant's breaches of the Agreement have resulted in total amounts due to CMI in excess of $4,200,000.00, excluding interest, attorneys' fees, costs, and other expenses Defendant owes CMI.

## **BREACH OF CONTRACT**

35. CMI hereby incorporates its allegations in paragraphs 1 through 34 of this Complaint as if they were set forth fully herein.

36. As set forth in greater detail in paragraphs 13 through 34 above, Defendant breached the Agreement when it delivered loans that failed to conform to the terms of the Agreement and subsequently refused to cure those nonconforming loans or repurchase those loans.

37. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Acevedo Loan # XXXXXX8621, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented owner occupancy of the subject property; and (ii) CMI was required to repurchase the Loan from Fannie Mae.

38. On February 4, 2010; April 12, 2010 and April 27, 2010, CMI demanded the repurchase of Avila Loan # XXXXXX4130, because Defendant breached the Agreement in several respects, including, but not limited to: (i) calculation of the borrower's income did not comply with applicable guidelines; (ii) the debt-to-income ratio exceeded applicable guidelines;

7

(iii) the loan application package did not contain documentation required by applicable guidelines, including a current credit history, a completed Conditional Commitment, and proof of the release of judgments against the borrower; (iv) no final title policy was provided as required by applicable guidelines; and (v) CMI was required to repurchase the Loan from Ginnie Mae.

39. On June 17, 2009; August 24, 2009; November 11, 2009; December 2, 2009; December 10, 2009; January 28, 2010 and February 10, 2010, CMI demanded the cure and/or repurchase of Bates Loan # XXXXXX9657, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented the borrower's assets; and (ii) CMI was required to repurchase the Loan from Freddie Mac.

40. On July 8, 2009; January 4, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Camba Loan # XXXXXX7467, because Defendant breached the Agreement in several respects, including, but not limited to: (i)  the loan application package misrepresented the borrower's debts and obligations by failing to disclose additional mortgages existing at the time of closing on the subject loan; and (ii) the debt-to-income ratio exceeded applicable guidelines; and (iii) CMI was required to repurchase the Loan from Freddie Mac.

41. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Cassidy Loan # XXXXXX9656, because Defendant breached the Agreement in several respects, including, but not limited to: (i) alleged identify fraud in connection with the borrower; and (ii) CMI was required to repurchase the Loan from Fannie Mae.

42. On November 4, 2009; January 28, 2010 and February 10, 2010, CMI demanded the cure and/or repurchase of Du Loan # XXXXXX4191, because Defendant breached the

Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

43. On January 4, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Gurrola Loan # XXXXXX1500, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

44. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Hernandez Loan # XXXXXX6323, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

45. On July 14, 2009; September 29, 2009 and November 3, 2009, CMI demanded the cure and/or repurchase of Herrera Loan # XXXXXX0851, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the Loan was funded by seller contributions that exceeded applicable guidelines; and (ii) CMI was required to repurchase the Loan from Fannie Mae.

46. On November 4, 2009; January 28, 2010 and February 10, 2010, CMI demanded the cure and/or repurchase of Macias Loan # XXXXXX7007, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

47. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of McCulloch Loan # XXXXXX9007, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

48. On January 4, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of McGautha Loan # XXXXXX9221, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

49. On July 16, 2009; September 28, 2009; November 3, 2009 and November 11, 2009, CMI demanded the cure and/or repurchase of Ng Loan # XXXXXX9005, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

50. On July 23, 2009; November 13, 2009 and November 17, 2009, CMI demanded the cure and/or repurchase of Nguyen Loan # XXXXXX8402, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented employment; (ii) the loan application package misrepresented income; and (iii) the loan application package failed to satisfy debt-to-income ratio requirements under applicable guidelines.

51. On July 8, 2009; February 4, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Oliva Loan # XXXXXX1303, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package contained an unsupported appraisal; (ii) the loan-to-value ratio exceeded applicable guidelines; and (iii) CMI was required to repurchase the Loan from Fannie Mae.

52. On January 4, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Pascua Loan # XXXXXX4547, because Defendant breached the Agreement in

several respects, including, but not limited to: (i)  the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

53. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Perguson Loan # XXXXXX1243, because Defendant breached the Agreement in several respects, including, but not limited to: (i)  the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

54. On January 5, 2009; July 14, 2009 and November 11, 2009, CMI demanded the repurchase of Pickert Loan # XXXXXX1144, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the Loan was subject loan Early Payment Default; (ii) the Loan was uninsured; and (iii) CMI was required to repurchase the Loan from Ginnie Mae.

55. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Ramos Loan # XXXXXX0915, because Defendant breached the Agreement in several respects, including, but not limited to: (i)  the loan application package misrepresented the borrower's income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

56. On July 16, 2009; September 28, 2009; November 3, 2009 and November 11, 2009, CMI demanded the cure and/or repurchase of Roman Loan # XXXXXX6628, because Defendant breached the Agreement in several respects, including, but not limited to: (i)  the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

57. On January 4, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Sanchez Loan # XXXXXX8406, because Defendant breached the Agreement in

several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

58. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Sanchez Loan # XXXXXX8845, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

59. On April 27, 2009; July 24, 2009; September 28, 2009; November 3, 2009; December 2, 2009;  January 28, 2010 and February 10, 2010, CMI demanded the cure and/or repurchase of Singh Loan # XXXXXX1465, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented employment; (ii) the loan application package misrepresented the borrower's income; and (iii) CMI was required to repurchase the Loan from Freddie Mac.

60. On February 4, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Tafoya Loan # XXXXXX7250, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

61. On January 26, 2010 and March 24, 2010, CMI demanded the cure and/or repurchase of Valdez Loan # XXXXXX8405, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

62. On February 4, 2010; March 24, 2010 and April 12, 2010, CMI demanded the repurchase of Young Loan # XXXXXX1697, because Defendant breached the Agreement in several respects, including, but not limited to: (i) the loan application package misrepresented

owner occupancy of the subject property; (ii) the loan application package misrepresented debts and liabilities in that the borrower had undisclosed mortgages existing at the time of closing on the subject property; (iii) the debt-to-income ratio exceeded applicable guidelines; and (iv) CMI was required to repurchase the Loan from Fannie Mae.

63.     Defendant failed to cure the defects identified with respect to these twenty-six (26) loans or to repurchase the loans in response to CMI's demands.

64.     As a result of Defendant's breaches of the Agreement, CMI has been damaged in an amount in excess of $4,200,000.00, the exact amount to be proved at trial.

65.     All conditions precedent, concurrent, or subsequent to CMI's rights and ability to bring this claim have taken place, have otherwise been met, have been waived, or have otherwise been excused.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff CitiMortgage, Inc., asks that this Court enter judgment in its favor and against Defendant, Reunion Mortgage, Inc, for damages in an amount to be proven at trial, its costs and attorneys' fees in prosecuting this action, pre-judgment interest through the date of judgment, post-judgment interest as provided by law, an order requiring Defendant to perform its obligations under the Agreement, including, but not limited to, the repurchase of defective loans, and such other and further relief as this Court deems just and proper.

Dated: September 1, 2010 **BRYAN CAVE LLP**

By: //s// Louis F. Bonacorsi
Louis F. Bonacorsi, #2668
Adam S. Hochschild, #498790
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 (facsimile)

Attorneys for Plaintiff CitiMortgage, Inc.

14